# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Stephanie G., | Civ. No. 21-1290 (WMW/BRT) |
| Plaintiff, | |
| v. | |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | REPORT AND RECOMMENDATION |
| Defendant. | |

Fay E. Fishman, Esq., Peterson & Fishman; and Mahesha P. Subbaraman, Esq., Subbaraman PLLC, counsel for Plaintiff.

Chris Carillo, Esq., Social Security Administration, counsel for Defendant.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Plaintiff's appeal[1] from the denial of her application for disability benefits by the Social Security Administration ("SSA" or "Agency"). On appeal, Plaintiff argues that the Agency's decision must be reversed because the Administrative Law Judge ("ALJ") who decided her case not only made a decision that was not supported by substantial evidence and contained legal errors, but also lacked the authority to decide her case under the Federal Vacancies Reform Act ("FVRA") and the Appointments Clause of the United States Constitution. The

---

[1] Plaintiff makes her appeal in the form of a motion for summary judgment pursuant to Local Rule. Minn. LR 7.2(c)(1).

Commissioner disputes Plaintiff's claim, both on the merits and on the issue of the ALJ's authority to adjudicate her application. For the reasons set forth in *Brian T. D. v. Kijakazi*, No. 19-cv-2542 (DTS), 2022 WL 179540 (D. Minn. Jan. 20, 2022), this Court concludes that because the ALJ was not constitutionally appointed, he lacked authority to decide Plaintiff's case. This Court therefore recommends that Plaintiff's summary-judgment motion be granted in part, the ALJ's decision be vacated, and the matter be remanded so it can be decided by a properly appointed ALJ.

## BACKGROUND

Plaintiff protectively filed an application for disability insurance benefits on January 10, 2019, alleging an inability to perform work since November 1, 2017. (Tr. 170–73.)[2] Her application was denied initially and on reconsideration. (Tr. 63–105.) Plaintiff requested a hearing before an ALJ, and ALJ Micah Pharris held an administrative hearing on August 13, 2020. (Tr. 33–59.) ALJ Pharris issued his written decision on August 25, 2020, denying Plaintiff's claims. (Tr. 10–25.) On April 20, 2021, SSA's Appeals Council denied Plaintiff's request for review, therefore making the ALJ's decision the final decision of the Commissioner. (Tr. 1–4); 20 C.F.R. § 404.981.

Plaintiff initiated judicial review with this Court on May 27, 2021. (Doc. No. 1.) Thereafter, Plaintiff requested and was granted leave to file an Amended Complaint, which was filed on February 24, 2022. (Doc. No. 32, Am. Compl.) In the Amended Complaint, Plaintiff added allegations that ALJ Pharris "was not properly appointed due

---

[2] Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the administrative record. (Doc. No. 17.)

2

to agency's failure to properly appoint ALJs as set forth in the Supreme Court's decision in *Lucia v. SEC* in 2018 and any subsequent re-ratification by Berryhill in July of 2018 was ineffective as Berryhill's authority was lapsed under the Federal Vacancies Reform Act ("FVRA") when she issued the Order." (Am. Compl., Factual Allegations ¶ 6.) In the alternative, Plaintiff alleges that "the FVRA is unconstitutional as applied to Berryhill's reappointment attempt, as Congress cannot constitutionally provide an inferior officer the power to provide other inferior officers indefinite appointments." (*Id.*) This Court addresses ALJ Pharris's appointment below and concludes that remand is required in this case because ALJ Pharris was not constitutionally appointed. Because this Court finds remand required on this issue, this Court does not address Plaintiff's other arguments relating to the ALJ's decision.

## DISCUSSION

**A.     The Appointments Clause and the FVRA**

The threshold issue before the Court is whether the ALJ had the authority to issue a determination on Plaintiff's application. This issue requires consideration of the United States Constitution's Appointments Clause and the later enacted FVRA, which was passed to address situations when the lead offices of executive agencies are left vacant.[3] The Constitution's Appointments Clause states:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls,

---

[3] A more fulsome discussion of the Appointments Clause and the FVRA can be found in two recent decisions from this District: (1) *Brian T.D. v. Kijakazi*, No. 19-cv-2542 (DTS), 2022 WL 179540 (D. Minn. Jan. 20, 2022); and (2) *Richard J.M. v. Kijakazi*, No. 19-cv-827 (KMM), 2022 WL 959914 (D. Minn. Mar. 30, 2022).

> Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. "This language serves at least two purposes—pragmatically, it assists the functioning of the Executive Branch by allowing subordinate officers to exercise executive authority, and structurally, it maintains a degree of accountability for both the President and the Senate." *Richard J.M.*, 2022 WL 959914, at *1 (D. Minn. Mar. 30, 2022) (citing *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1978–79 (2021), and *Brian T.D.*, 2022 WL 179540, at *2). "The Appointments Clause prescribes 'the permissible methods of appointing "Officers of the United States," a class of government officials distinct from mere employees.'" *Id.* at *2 (quoting *Lucia v. Sec. and Exchange Comm'n*, 138 S. Ct. 2044, 2049 (2018)).

The Appointments Clause "distinguishes between two kinds of officers." *Seila Law LLC v. Consumer Fin. Prot. Bur.*, 140 S. Ct. 2183, 2199 n.3 (2020). The first kind—sometimes referred to as PAS appointments or PAS officers—must be appointed by the President with the advice and consent of the Senate. *Id.*; *see also Richard J.M.*, 2022 WL 959914, at *2. The Commissioner of the Social Security Administration is a PAS officer. The second kind of officer are referred to as "inferior officers." *Seila Law*, 140 S. Ct. at 2199 n.3. Inferior officers "can also be appointed by the President with the advice and consent of the Senate, but 'whose appointment Congress may vest in the President, courts, or heads of Departments.'" *Richard J.M.*, 2022 WL 959914, at *2 (quoting *Seila*

*Law*, 140 S. Ct. at 2199 n.3). ALJ Pharris's appointment would be considered that of an "inferior officer."

In 1998, Congress enacted the Federal Vacancies Reform Act ("FVRA"). 5 U.S.C. § 3345 *et seq*. The FVRA clarifies who can act as an agency head and sets the limitations on how long an acting officer can serve. The FVRA provides, in relevant part:

> (a) If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office--
>
> > (1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346[.]

5 U.S.C. § 3345(a). "Alternatively, the President may direct either a senior official of that agency or a person in any other advice and consent position to serve as the acting officer." Valerie C. Brannon, Cong. Research Serv. R44997, The Vacancies Act: A Legal Overview (2018) (Summary), https://crsreports.congress.gov/product/pdf/R/R44997/13) (last visited June 14, 2022). Such acting officers are "subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(2)–(3).

Section § 3346 states the following:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office-
>
> > (1) for no longer than 210 days beginning on the date the vacancy occurs; or
> >
> > (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such

>nomination for the period that the nomination is pending in the Senate.
>
>(b)(1) If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.
>
>>(2) Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer may continue to serve—
>>
>>>(A) until the second nomination is confirmed; or
>>>
>>>(B) for no more than 210 days after the second nomination is rejected, withdrawn, or returned.
>
>(c) If a vacancy occurs during an adjournment of the Congress sine die, the 210-day period under subsection (a) shall begin on the date that the Senate first reconvenes.

5 U.S.C. § 3345(a)–(c). "Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting officer to perform the functions and duties of any PAS office unless a statutory provision expressly authorizes otherwise or the President fills a vacancy during the Senate recess." *Brian T.D.*, 2022 WL 179540, at *3 (citing 5 U.S.C. § 3347(a)).

**B.    Legal Analysis**

Plaintiff argues that ALJ Pharris, the ALJ who issued the decision on behalf of the Social Security Administration denying her application for disability benefits, lacked the authority to decide her case because he was not appointed as an ALJ by someone with the authority to make that appointment pursuant to the FVRA and the Appointments Clause of the United States Constitution, therefore making the ALJ's appointment

unconstitutional. There appears to be no dispute that ALJ Pharris was appointed by SSA staff in 2014, and not by the President or a designated PAS officer (i.e., not by a Commissioner of Social Security or an Acting Commissioner of Social Security). Accordingly, ALJ Pharris's appointment by SSA staff in 2014 was in violation of both the Appointments Clause and the FVRA. *See Carr v. Saul*, 141 S.Ct. 1352, 1357 (2021) (stating that "[t]he Commissioner did not dispute that the ALJs who decided petitioners' case were unconstitutionally appointed" when the ALJ had been "selected by lower level staff rather than appointed by the head of the agency").

Defendant contends, however, that the SSA cured any defect when Nancy Berryhill later ratified ALJ Pharris's appointment on July 16, 2018. The question here then becomes whether Ms. Berryhill had the authority to ratify the appointment of ALJ Pharris in July 2018. This question turns on the statutory interpretation of 5 U.S.C. § 3346 as it applied to Ms. Berryhill.[4]

The parties do not dispute that Ms. Berryhill, then the Deputy Commissioner of Operations for SSA, became Acting Commissioner on January 21, 2017. (Doc. No. 38, Def.'s Resp. in Opp'n to Pl.'s Suppl. Mem. ("Def.'s Resp.") 3.) Ms. Berryhill initially served in that capacity until November 16, 2017, when the time period of acting service

---

[4] As was the case in *Brian T.D.* and *Richard J.M*, the undersigned finds it appropriate to assume without deciding that Ms. Berryhill's services as Acting Commissioner was never pursuant to 42 U.S.C. § 902(b)(4). *See Brian T.D.*, 2022 WL 179540, at *8; *Richard J.M.*, 2022 WL 959914, at *7. Neither party has raised § 902(b)(4) in this matter.

7

expired pursuant to the FVRA.[5] (*Id.*) During her 210 days of active service, President Trump did not nominate a SSA Commissioner. Due to the lapse, the SSA did not have an Acting Commissioner beginning November 17, 2017, and the position was vacant. (Def.'s Resp. at 4.) On April 17, 2018, President Trump nominated Andrew Saul to be the Commissioner of SSA. (*Id.*)

According to Defendant, the SSA presumed that Mr. Saul's nomination automatically triggered Ms. Berryhill's resumption of service as Acting Commissioner on April 17, 2018, and then continued for another period during the pendency of Mr. Saul's nomination.[6] (Def.'s Resp. at 4 (referring to § 3346(a)(2)). It was during this period that Ms. Berryhill ratified the appointment of SSA ALJs (including ALJ Pharris's appointment) on July 16, 2018 (i.e., after her 210 days had expired and when Mr. Saul's nomination for office was submitted and pending before the Senate). Defendant calls Ms. Berryhill's resumption of service on April 17, 2018, following the gap in service, a "spring back." Specifically, Defendant argues that § 3346(a)(2) allows an official, like Ms. Berryhill, whose initial period of acting service expired, an automatic "spring back" into valid acting service as a department head even when a nomination to the PAS office is made after more than 210 days has elapsed. (Def.'s Resp. at 5–6.) Using this premise, Defendant argues that by resuming her service as Acting Commissioner, Ms. Berryhill

---

[5] The Government Accountability Office ("GAO") concluded that Ms. Berryhill's period of valid service as Acting Commissioner under the FVRA expired on November 16, 2017. (Def.'s Resp. at 3–4.)

[6] Mr. Saul's first nomination was returned by the Senate; he was not sworn in until June 17, 2019, after a second nomination.

acted to properly ratify the appointments of all SSA ALJs and approved them as her own in her capacity as Acting Commissioner on July 16, 2018. (*Id.* at 18–20.)

Relying on *Brian T.D. v. Kijakazi*, No. 19-cv-2542, 2022 WL 179540 (D. Minn. Jan. 20, 2022), Plaintiff disagrees and argues that Ms. Berryhill could not resume her duties as Acting Commissioner under the FVRA following the lapse of the 210-day time period. Plaintiff argues that § 3345 makes clear that the filling of the vacancy of an Acting Commissioner is subject to the time limitations in § 3346, and §§ 3345 and 3346 read together do not authorize such a resumption of service by Ms. Berryhill to the role of Acting Commissioner. More specifically, Plaintiff asserts that § 3346(a) authorizes either a single 210-day period or a longer, single period of service *only* if the President makes a nomination during the initial 210-day period. Here, Ms. Berryhill's 210-day period expired, and the President did not make the nomination of Mr. Saul during that 210-day period. Thus, according to Plaintiff, Ms. Berryhill was not properly placed as Acting Commissioner and lacked authority to ratify the appointment of SSA ALJs on July 16, 2018.

If Plaintiff's statutory interpretation is correct, Ms. Berryhill's purported ratification of the Agency's ALJs on July 16, 2018, was ineffective and ALJ Pharris was not properly appointed when Plaintiff's case was heard and decided. If Defendant's statutory interpretation is correct, Ms. Berryhill was validly serving as Acting Commissioner when she ratified the ALJ appointments and approved them as her own.

This statutory interpretation question—as it related to Ms. Berryhill—was answered by United States Magistrate Judge Schultz in *Brian T.D.*, and United States

Magistrate Judge Menendez[7] in *Richard J.M.* [8] *See Brian T.D.*, 2022 WL 179540, at *2 ("This question turns on the meaning of section 3346(a) and whether section 3346(a)(1) is a tolling provision or a 'spring-back' provision."); *Richard J.M.,* 2022 WL 959914, at *3 (stating the question as, "if an acting official's 210-day period of service expires, and the President nominates another for the PAS office, does the FVRA allow the acting official to resume another period of acting service while the nomination is pending?"). Both courts separately concluded that Ms. Berryhill was not properly serving as the Acting Commissioner of the SSA in July 2018, and that her purported ratification of ALJs on July 16, 2018, was ineffective. This Court agrees with the analysis in both cases and respectfully rejects Defendant's argument that Ms. Berryhill was validly serving as Acting Commissioner when she ratified and approved the appointments of SSA ALJs.

Statutory interpretation begins with considering the statute's language. The plain language in § 3346, when considered in context with the plain language in § 3345, does

---

[7]    Judge Menendez was elevated to a District Court Judge in the District of Minnesota in December 2021. Judge Menendez embraced Magistrate Judge Schultz's statutory analysis regarding § 3346's time limits. *See Richard J.M.*, 2022 WL 959914, at *8–9.

[8]    ALJ Pharris is similarly situated to the ALJs in *Brian T.D.* and *Richard J.M*. The ALJ in *Brian T.D*. held an administrative hearing on August 14, 2018, and issued her decision denying the claimant's application for benefits on October 1, 2018. *Brian T.D.*, 2022 WL 179540, at *5. The ALJ in *Richard J.M*. held an administrative hearing on July 30, 2018, and issued a written decision on August 21, 2018. *Richard J.M*., 2022 WL 959914, at *3; *see also Tyrese L.L. v. Kijakazi*, No. 21-cv-1311 (DTS), 2022 WL 1463069, at *1 (D. Minn. Mar. 9, 2022) (stating that the defendant conceded that ALJ Washington, who heard and decided claimant's case pursuant to Ms. Berryhill's purported ratification, was similarly situated to the ALJ who presided over the claim in *Brian T.D.*).

10

not provide for Ms. Berryhill to automatically resume the role of Acting Commissioner after her 210 days of service lapsed and the position was vacant. To the contrary, the plain language of § 3346(b)(1) only contemplates a possibility of *continued* service, not a "spring back" after a gap in service. *See* 5 U.S.C. § 3346(b)(1) ("If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may *continue to serve* as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.") (emphasis added). This is further supported by the present tense use of the word "serving" in § 3346(a)(1), rather than reference to someone who had served in the past. *See* 5 U.S.C. § 3346(a)(1) (stating that "*the person serving* as an acting officer as described under section 3345 may serve in the office . . . for no longer than 210 days") (emphasis added). Subsection (b)(2) also expressly contemplates the present—and not past—service as the Acting Commissioner. *See* 5 U.S.C. § 3346(b)(2) (stating that "the person *serving* as the acting officer may continue to serve") (emphasis added). This Court also agrees that "the plain reading and ordinary usage of the word 'or' in § 3346(a) is that a person serving as Acting Commissioner may serve for a 210-day period from the start of the vacancy, *or* if the person is already 'serving as acting officer' according to the FVRA, may continue serving during the pendency of a timely nomination." *Brian T.D.*, 2022 WL 179540, at *13 (emphasis in original). The plain language in the statute therefore describes how and when continuous service is allowed; it does not support a spring-back option.

Furthermore, Mr. Saul's nomination on November 17, 2017, did not extend Ms. Berryhill's 210-day service period in any way. According to the plain language in

11

§ 3346(a)(2), the initial period of service is extended only if, *during* the 210-days, a nominee is named. 5 U.S.C. § 3346(a)(2). Here, Mr. Saul was nominated *after* Ms. Berryhill's 210 days had expired. *See Brian T.D.*, 2022 WL 179540, at *11 ("Therefore, by its plain language, § 3346(a)(2) does not apply to Berryhill because she was not serving as Acting Commissioner when Saul was nominated.").

For the reasons stated above and further set forth in *Brian T.D.* and *Richard J.M*, this Court finds that, pursuant to the plain language of the statute, Ms. Berryhill could not resume the role of Acting Commissioner when President Trump nominated Mr. Saul after Ms. Berryhill's initial 210-day limitation lapsed.[9] *See Brian T.D.*, 2022 WL 179540, at *14 (finding that Ms. Berryhill's "period of acting service expired and the FVRA did not allow her to resume acting as Commissioner at a later date"). And since Ms. Berryhill was not properly serving as the Acting Commissioner of the SSA in July 2018, her purported ratification of the Agency's ALJs on July 16, 2018 was ineffective. *See id*. at *16 (concluding that Ms. Berryhill's purported ratification of ALJ appointments was ineffective).

In the alternative, the Agency argues that "[e]ven if Ms. Berryhill was not validly serving as Acting Commissioner when she ratified and approved the appointments of SSA ALJs as her own . . . , Plaintiff is not entitled to an entirely new hearing," based on

---

9   Because this Court agrees with the conclusions in *Brian T.D*. and *Richard J.M.* that the plain language of the statute did not allow Ms. Berryhill to resume the position of acting Commissioner on November 17, 2017, it concludes, as did the *Brian T.D.* and *Richard J.M.* courts, that resort to legislative history is unnecessary. *See Richard J.M.*, 2022 WL 959914, at *9 (citing *Brian T.D.*, 2022 WL 179540, at *14).

12

the "rule of necessity" as noted in *Lucia v. SEC*, 138 S.Ct. 2044, 2055 n. 5 (2018). (Def.'s Resp. at 27–28.) In addition, Defendant argues that the "de facto officer doctrine" should also apply, which –

> rests on "considerations of policy and necessity," . . . and serves to prevent "the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office.

(Def.'s Resp. at 29 (quoting *Norton v. Shelby Cnty.*, 118 U.S. 425, 441 (1886), and *Ryder v. United States*, 515 U.S. 177, 180 (1995).) To be sure, this Court recognizes the apparent burden and "strain" on the system; but here, Defendant has not challenged (or even addressed) the *Brian T.D.* court's estimation about the scope of the Agency's burden. In *Brian T.D.*, the court explained that –

> [t]he only Claimants who may benefit from this decision must have received an adverse ALJ decision, timely appealed to the SSA Appeals Council, had their review denied, then timely filed a claim in federal court, did not obtain a remand on the merits, and raised a timely challenge to Berryhill's ratification.

*Brian T.D.*, 2022 WL 179540, at *16. The court stated that "the scope of th[e] burden [on the system] is exaggerated by Defendant," and it estimated 9,799 cases at most nationwide that the decision might impact. *Id.* Here, instead of offering evidence of the real burden to the Agency, Defendant generically references the "[h]undreds of thousands of claimants . . . who were awaiting action on their requested administrative hearings as a predicate to accessing vital government benefits" and "untold *thousands* of SSA disability determinations" that would need to be unwound. (Def.'s Resp. at 28, 30 (emphasis in original).) However, without evidence of the actual burden to SSA—above

13

that estimated by the court in *Brian T.D.*—this Court cannot evaluate whether Defendant's alternative arguments should apply to the situation at hand. As it stands, this Court agrees with the court in *Brian T.D.* that the resulting burden of rehearing approximately 9,799 cases nationwide (amounting to "less than three percent of all 2020 claimants nationwide") does not "justify this Court ignoring the statute's clear language." *Brian T.D.*, 2022 WL 179540, at *16 ("Administrative inconvenience may result from this decision, however, as the Supreme Court recently reiterated, 'pleas of administrative inconvenience . . . never justify departing from the statute's clear text.'") (quoting *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1485 (2021)).

In conclusion, this Court finds that Ms. Berryhill was not properly serving as the Acting Commissioner of the SSA in July 2018, and her purported ratification of all Agency ALJs—including ALJ Pharris—on July 16, 2018, was ineffective. Because ALJ Pharris's appointment was ineffective, he lacked the authority to decide Plaintiff's claim. Accordingly, this Court recommends that the ALJ's decision be vacated, and Plaintiff's claim be remanded to the SSA for a new hearing before a properly appointed ALJ other than the ALJ who presided over the first hearing.[10]

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

---

[10] Because this Court finds that Ms. Berryhill's purported ratification of the Agency's ALJs was ineffective and recommends that the ALJ's decision be vacated and Plaintiff's claim be remanded to the Agency for a new hearing, this Court does not address any other issues raised by Plaintiff on appeal.

1.  Plaintiff's Motion for Summary Judgment (Doc. No. 18) be **GRANTED IN PART** to the extent that the ALJ's decision be vacated, and this case be remanded to the SSA for a new hearing before a properly appointed ALJ who is not the same ALJ that presided over Plaintiff's first hearing;

2.  Defendant's Motion for Summary Judgment (Doc. No. 20) be **DENIED**; and

3.  Judgment be entered accordingly.

Dated: June 21, 2022

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).