UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Stephanie G.,                                    Case No. 21-cv-1290 (WMW/BRT)

                        Plaintiff,
                                            **ORDER ADOPTING REPORT AND**
        v.                                      **RECOMMENDATION**

Kilolo Kijakazi, *Acting Commissioner of*
*Social Security*,

                        Defendant.

---

Before the Court is the June 21, 2022 Report and Recommendation (R&R) of United States Magistrate Judge Becky R. Thorson. (Dkt. 41.) Defendant Kilolo Kijakazi objects to the R&R. For the reasons addressed below, the Court overrules Kijakazi's objections, adopts the R&R, grants in part Plaintiff Stephanie G.'s motion for summary judgment, and denies as moot Kijakazi's motion for summary judgment.

## BACKGROUND

Stephanie G. filed an application with the Social Security Administration (SSA) for disability insurance benefits on November 28, 2018, asserting that she had been unable to perform work beginning on November 1, 2017. The SSA denied Stephanie G.'s application both initially and on reconsideration. Stephanie G. requested a hearing before an Administrative Law Judge (ALJ). The ALJ held an administrative hearing on Stephanie G.'s application on August 13, 2020, and issued a written decision denying Stephanie G.'s claims on August 25, 2020. Stephanie G. appealed the decision and, on

April 20, 2021, the SSA's Appeals Council denied Stephanie G.'s request for review.  The ALJ's decision, therefore, became the final decision of the commissioner of the SSA.

Stephanie G. commenced this lawsuit on May 27, 2021, appealing the denial of her application for disability benefits.  Stephanie G. contends that the SSA's decision must be reversed because the unfavorable decision from the ALJ is not supported by substantial evidence.  In her amended complaint, Stephanie G. also alleges that the ALJ lacked the authority to decide her case under the Federal Vacancies Reform Act (FVRA).  Kijakazi disputes Stephanie G.'s allegations, both as to the issue of the ALJ's authority to adjudicate Stephanie G.'s application and as to Stephanie G.'s entitlement to a new hearing.

The June 21, 2022 R&R recommends that the Court conclude that the ALJ who decided Stephanie G.'s claim lacked the authority to do so because former SSA acting commissioner Nancy Berryhill's ratification of the ALJ's appointment was statutorily ineffective.  The June 21, 2022 R&R, therefore, recommends granting Stephanie G.'s motion for summary judgment in part, vacating the ALJ's decision and remanding the case to the SSA for a new hearing before a properly appointed ALJ who is not the same ALJ that presided over Stephanie G.'s first hearing.  The June 21, 2022 R&R also recommends denying Kijakazi's motion for summary judgment.  Kijakazi objects to the R&R, arguing that the ALJ was validly appointed at the time that the ALJ decided Stephanie G.'s claim and that, even if the ALJ had not been validly appointed at that time, Stephanie G. is not entitled to a rehearing on her claim.  The Court addresses Kijakazi's arguments in turn.

## ANALYSIS

A district court reviews *de novo* those portions of an R&R to which timely objections are filed.  28 U.S.C § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); LR 72.2(b)(3).  The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  An objection to an R&R must specify the nature of the objection and the grounds for doing so. *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

## I.   Statutory Effectiveness of the ALJ's Appointment

The R&R concludes that Berryhill's ratification of the ALJ's appointment was statutorily ineffective because Berryhill's lawful tenure as acting SSA commissioner had elapsed.  Kijakazi objects to this aspect of the R&R, arguing that Berryhill was validly serving as acting SSA commissioner when she ratified the ALJ's appointment.  To determine whether the ALJ was lawfully appointed, the Court must first determine whether the Appointments Clause of the United States Constitution applies to the position of commissioner of the SSA.  The Court must then analyze how the FVRA constrains the service of the acting commissioner of the SSA.  The Court may then determine whether Berryhill's ratification of the ALJ's appointment was statutorily effective and address Kijakazi's arguments against granting Stephanie G. a new hearing.

### A.   The Appointments Clause

The Appointments Clause provides the exclusive process by which the President of the United States may appoint "officers of the United States," including officers who

exercise powers of the Executive Branch.  U.S. Const. art. II, § 2, cl. 2.  The Appointments Clause divides officers into two classes: principal officers and inferior officers.  *United States v. Germaine*, 99 U.S. 508, 509–11 (1878).  Principal officers must be appointed by the President with the advice and consent of the Senate.  *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021).  Inferior officers are appointed in the same manner unless Congress "by Law" authorizes the President, a court of law or the head of a department to appoint particular inferior officers without the advice and consent of the Senate.  *Edmond v. United States*, 520 U.S. 651, 660 (1997).  The SSA commissioner and deputy commissioner are principal officers who must be appointed.  42 U.S.C. § 902(a)(1), (b)(1).

### B.   The Federal Vacancies Reform Act (FVRA)

Because the process for appointing principal officers may leave a principal office vacant for a period of time, the Appointments Clause authorizes the President to "fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session."  U.S. Const. art. II, § 2, cl. 3.  But because not all vacancies occur during the recess of the Senate and the duration of the appointment process can be lengty, Congress limits the President's authority to appoint officials to temporarily perform the functions of a vacant principal office without Senate approval.  *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 935 (2017).

The FVRA governs who may act as an agency head and sets limits on the length of time during which an acting officer may serve in the acting capacity.  The FVRA provides, in relevant part:

> (a) If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—
>
> > (1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346[.]

5 U.S.C. § 3345(a). The President also may choose to appoint a different person who meets certain criteria to perform those functions and duties. *Id.* § 3345(a)(2)–(3). These acting officers are "subject to the time limitations of section 3346." *Id.* § 3345(a)(1)–(3).

Section 3346 limits an individual's service as an acting officer, providing:

> (a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office--
>
> > (1) for no longer than 210 days beginning on the date the vacancy occurs; or
>
> > (2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.
>
> (b)(1) If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.
>
> (2) Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer may continue to serve--

> (A) until the second nomination is confirmed; or
>
> (B) for no more than 210 days after the second nomination is rejected, withdrawn, or returned.
>
> (c) If a vacancy occurs during an adjournment of the Congress sine die, the 210-day period under subsection (a) shall begin on the date that the Senate first reconvenes.

*Id.* § 3346(a)–(c).  Section 3345 and Section 3346 are the exclusive means for temporarily authorizing an acting officer to perform the functions and duties of a principal office unless a statutory provision expressly authorizes otherwise or the President fills a vacancy during the Senate recess.  *Id.* § 3347(a).

Courts frequently look to Congress's choice of verb tense to interpret statutes.  *See Carr v. United States*, 560 U.S. 438, 447–48 (2010).  When a court is determining the meaning of a statute, the present tense generally does not include the past tense.  *Id.* at 448 (citing the Dictionary Act, 1 U.S.C. § 1).  Congress, when enacting Section 3346, used the present participle "serving" rather than the past or present perfect "served" or "has served."  Section 3346(a) applies to "the person serving as an acting officer" under Section 3345.  By its terms, therefore, Section 3346(a) applies to the person presently serving in the acting capacity and not to a person whose previous service as acting officer has expired.

This conclusion is supported not only by the language of Section 3346, but also by its structure and context.  *See Carr*, 560 U.S. at 449 (stating that "undeviating use of the present tense" is a "striking indicator of [a statute's] prospective orientation" (internal quotation marks and brackets omitted)).  Section 3346(b)(1) provides that, if a nomination is rejected, withdrawn or returned, "the person *may continue to serve* as the acting officer

for no more than 210 days." 5 U.S.C. § 3346(b)(1) (emphasis added). Section 3346(b)(2) provides that, if a second nomination is unsuccessful, "the person serving as the acting officer may *continue to serve*." *Id.* § 3346(b)(2) (emphasis added). The Court discerns no good reason for construing the word "serving" when used in Section 3346(a) differently than when the same word is used in Section 3346(b). The structure and context of Section 3346 indicates that the use of the present participle is deliberate—only a person presently serving may continue to serve. Section 3346(a)(2), therefore, applies only to a person presently serving as acting officer if, at the time of nomination of a principal officer, that acting officer is performing "the functions and duties of the office" in accordance with the FVRA. *Id.* at §§ 3345(a), 3346(a)(2).

Section 3348 further provides, in relevant part, that "[u]nless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347, [and there is a principal officer vacancy,] . . . the office shall remain vacant." *Id.* § 3348(b). Section 3348, therefore, confirms the foregoing interpretation of Section 3346. Unless someone "is performing the functions and duties" in accordance with the FVRA, the principal office "shall remain vacant" until the appointment of a principal officer is complete. *Id.* § 3348(b)(1), (b)(2).

Accordingly, the FVRA plainly requires that, after an acting officer's 210-day tenure expires, "the office shall remain vacant." *Id.* § 3348(b)(1). "[A]ny function or duty of a vacant office" performed by a person not properly serving under the statute "shall have no force or effect" and may not be ratified. *Id.* § 3348(d); *NLRB*, 137 S. Ct. at 937–38.

### C.     Berryhill's Tenure as Acting Commissioner

The SSA commissioner and deputy commissioner are principal officers that must be appointed.  42 U.S.C. § 902(a)(1), (b)(1).  The deputy commissioner "shall be Acting Commissioner . . . unless the President designates another officer of the Government as Acting Commissioner, in the event of a vacancy in the office of the Commissioner." *Id.* § 902(b)(4).

Berryhill became acting commissioner of the SSA on January 21, 2017.  In March 2018, the Government Accountability Office (GAO) concluded that Berryhill's period of valid service as acting commissioner under the FVRA expired on November 16, 2017.[1] *See* U.S. Government Accountability Office, Violation of the Time Limit Imposed by the Federal Vacancies Reform Act of 1988—Commissioner, Social Security Administration, B-329853 (Mar. 6, 2018), *available at* https://www.gao.gov/assets/b-329853.pdf (last visited Aug. 15, 2022) (GAO Report).  Because President Donald Trump did not nominate anyone to serve as SSA commissioner between the date of his inauguration on January 20, 2017, and November 16, 2017, the GAO concluded that Berryhill's acting service between November 16, 2017, and March 6, 2018, violated the FVRA.  *Id.*  After the GAO's March 2018 notice, Berryhill stepped down as acting commissioner.  On April 17, 2018, President Trump nominated Andrew Saul to serve as commissioner of the SSA.

---

[1]     November 16, 2017, is 300 days after January 20, 2017.  Although this time period exceeds the 210-day statutory timeframe by 90 days, a 90-day extension is permitted in circumstances when a vacancy arises at the beginning of the President's term.  *See* 5 U.S.C. § 3349a(b).

In June 2018, the Supreme Court of the United States decided *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018).  The Court held in *Lucia* that Securities and Exchange Commission (SEC) ALJs, who preside over enforcement proceedings involving federal securities laws, are "Officers of the United States" within the meaning of the Appointments Clause.  *Lucia*, 138 S. Ct. at 2053–55.  SEC ALJs, therefore, must be appointed by the President, a court of law or a department head.  *Id.* at 2051, 2055.  Because the SEC ALJ who decided the enforcement proceeding in *Lucia* had not been appointed by any of these methods, the Court concluded that the plaintiff was entitled to a new hearing before a properly appointed official and that official must be someone other than the SEC ALJ who had originally ruled against the plaintiff.  *Id.* at 2055.

The SSA similarly appoints ALJs.  The commissioner of the SSA "shall appoint such additional officers and employees as the Commissioner considers necessary to carry out the functions" of the SSA.  42 U.S.C. § 904(a)(1).  The commissioner does this, in part, through the appointment of ALJs to conduct disability-benefit hearings.  5 U.S.C. §§ 556, 3105.  Prior to *Lucia*, SSA ALJs, like SEC ALJs, had been selected by lower-level staff.  *Carr v. Saul*, 141 S. Ct. 1352, 1357 (2021).  On July 16, 2018, in response to *Lucia*, Berryhill issued an agency-wide ratification and reappointment of SSA ALJs that provides, in relevant part:

> To address any Appointments Clause questions involving Social Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of [the Agency's] ALJs and approved those appointments as her own.

Social Security Ruling 19-1p, Titles II and XVI: Effect of the Decision in Lucia v. Securities and Exchange Commission (SEC) On Cases Pending at the Appeals Council, 84 Fed. Reg. 9582–84 (Mar. 15, 2019).  At the time Berryhill purportedly ratified these ALJ appointments, Berryhill had served as "acting commissioner" of the SSA for 390 days.[2]

In March 2019, the SSA issued a ruling that permitted the SSA Appeals Council, in response to timely requests for review, to vacate ALJ decisions issued before Berryhill's purported ratification and conduct a new review by the Appeals Council or "an ALJ other than the ALJ who issued the decision under review."  *Id.* at 9583.  But the SSA applied this remedial action only to claimants who had raised an Appointments Clause challenge in their administrative proceedings before either an ALJ or the Appeals Council.  *Id.* at 9582; *see also Brian T. D. v. Kijakazi*, No. 19-cv-2542 (DTS), 2022 WL 179540, at *5 (D. Minn. Jan. 20, 2022) (observing that "this remedial action was applied only to claimants who had raised an Appointments Clause challenge in administrative proceedings before either the ALJ or the Appeals Council").

### D.    The Appointment of the ALJ who Decided Stephanie G.'s Case

The parties do not dispute that the ALJ who decided Stephanie G.'s case was appointed in 2014 by SSA staff, and not by the President or a designated principal officer. Nor do the parties dispute that, on July 16, 2018, Berryhill purported to ratify the

---

[2]    This calculation excludes the 152-day period from November 17, 2017, through April 17, 2018, during which the GAO Report found that Berryhill was not properly the "Acting Commissioner."

appointments of all SSA ALJs, including the ALJ involved in this case.  Kijakazi argues

that Saul's nomination automatically triggered a resumption in Berryhill's valid service as

acting commissioner on April 17, 2018, which continued throughout the pendency of

Saul's nomination.  Berryhill purported to ratify all of the SSA's ALJ appointments,

including the appointment of the ALJ in this case, on July 16, 2018.  This action occurred

241 days after Berryhill's service as acting commissioner expired under the FVRA.[3]

Stephanie G. argues that this ratification was ineffective.

---

[3]      Kijakazi describes Berryhill's purported resumption of service as acting
commissioner as a "spring back," which allows an individual to resume serving as an acting
officer after their 210-day service expired if a principal officer is nominated after the acting
officer's 210-day period of service as an acting officer.  Kijakazi contends that the majority
of courts to consider the question presented in this case have endorsed Kijakazi's view that
Berryhill was statutorily authorized to resume her service as acting commissioner in this
way.  But this argument is inconsistent with the relevant text of the FVRA as addressed in
Part I.B. of this Order.  Moreover, the two judges in this District who have addressed this
issue found the "spring-back" argument unavailing and concluded that ALJs whose
appointments Berryhill ratified were not constitutionally appointed.  *See Richard J. M. v.
Kijakazi*, No. 19-cv-827 (KMM), 2022 WL 959914, at *7 (D. Minn. Mar. 30, 2022)
(concluding that "Berryhill was not properly serving as the Acting Commissioner of the
SSA in July 2018, and her purported ratification of the Agency's ALJs on July 16, 2018
was ineffective"); *Brian T. D.*, 2022 WL 179540, at *16 ("As a matter of statutory
interpretation, Berryhill's purported ratification is ineffective because under the FVRA,
she was not properly acting as the Commissioner at that time.  Since the ALJ was not
properly appointed she lacked the authority to hear and decide Claimant's case, thus the
ALJ's decision is vacated.").  These holdings also are consistent with the decisions of
several courts outside this District.  *See Brunson v. Saul*, No. 18-5562, 2019 WL 3413520,
at *2 (E.D. Pa. July 26, 2019) (noting that "[t]he Commissioner concedes that the SSA ALJ
who presided over Brunson's hearing was not constitutionally appointed"); *Bradshaw v.
Berryhill*, 372 F. Supp. 3d 349, 351 (E.D.N.C. 2019) (concluding that "the appointment of
the ALJ who issued the decision below did not comply with the Appointments Clause"),
*aff'd sub nom. Probst v. Saul*, 980 F.3d 1015, 1025 (4th Cir. 2020); *Probst v. Berryhill*,
377 F. Supp. 3d 578, 587 (E.D.N.C. 2019) (concluding, in a case involving an ALJ whose
appointment Berryhill had ratified, that "the ALJ who decided plaintiff's case was

Section 3346 provides that "the person *serving* as an acting officer" may serve in the office (1) "for no longer than 210 days beginning on the date the vacancy occurs; or" (2) "once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a) (emphasis added).  Section 3348 further provides, in relevant part, that "[u]nless an officer or employee is performing the functions and duties in accordance with sections 3345, 3346, and 3347, [and there is a principal officer vacancy,] . . . the office shall remain vacant." *Id.* § 3348(b).

The GAO concluded that Berryhill was "the person serving as an acting officer" from January 20, 2017, until November 16, 2017, at which point her term expired.  When the President nominated Saul to become commissioner of the SSA on April 17, 2018, Berryhill was not serving as acting commissioner, and Saul's nomination did not create a new vacancy.  Because Berryhill was not serving as acting commissioner when Saul was nominated, Section 3346(a)(2) does not apply to Berryhill.  Section 3346(b) also does not apply to Berryhill's service because Section 3346(b) applies when a person is serving as an acting officer *when* a nomination for a principal officer is rejected, withdrawn or returned.  When Saul was nominated, there was no acting commissioner who was performing the functions and duties of the commissioner of the SSA under the FVRA.  As

---

appointed in violation of the Appointments Clause"), *aff'd sub nom. Probst*, 980 F.3d at 1025.  Accordingly, Kijakazi's "spring back" argument is unavailing.

Berryhill's service as acting commissioner expired on November 17, 2017, her July 16, 2018 ratification of the ALJ's appointment was statutorily ineffective.

Because the ALJ in this case was not properly appointed—either through his initial appointment in 2014 or through Berryhill's attempt to ratify his appointment in July 2018—the ALJ lacked the authority to hear and decide Stephanie G's case. For this reason, the ALJ's decision must be vacated. *See Carr*, 141 S. Ct. at 1357; *Lucia*, 138 S. Ct. at 2055. Accordingly, the Court overrules Kijakazi's objection to this aspect of the R&R.

## II.    Stephanie G.'s Entitlement to a New Hearing

Kijakazi contends that, even if Berryhill's ratification of the ALJ's appointment was invalid, Stephanie G. is not entitled to a new hearing. Stephanie G. disagrees.

Remand is not warranted, Kijakazi contends, because the President had independent authority under 42 U.S.C. § 902(b)(4) to designate Berryhill as acting commissioner. Although an acting commissioner may serve in that capacity pursuant to Section 902(b)(4), Kijakazi provides no evidence establishing that Berryhill *actually served* as acting commissioner pursuant to Section 902(b)(4). In addition, in February 2020, the Comptroller General confirmed that Berryhill did not serve as acting commissioner pursuant to Section 902(b)(4). *See* Comptroller General, Matter of: Social Security Administration—Legality of Service of Acting Commissioner, B-333543, 2022 WL 326059, at *5 (Feb. 1, 2022) (distinguishing Kijakazi's service as acting commissioner pursuant to Section 902(b)(4), which is not encumbered by the FVRA's time limits on acting service, from the circumstances that led to the 2018 GAO Report determining that

Berryhill's service as acting commissioner violated the FVRA's time limits).  For these reasons, Kijakazi's argument regarding the President's independent appointment authority pursuant to Section 902(b)(4) is unavailing.

Kijakazi also contends that the "rule of necessity" permits the Court to decide this case regardless of the statutory ineffectiveness of the ALJ's appointment.  Kijakazi asks the Court to ignore the requirements of the Appointments Clause and the FVRA because, if the ALJ appointments that Berryhill ratified are statutorily ineffective, those Berryhill-ratified ALJs would have been required to decline to decide cases until they were properly appointed.  Kijakazi labels this circumstance an "absurd outcome."  The Court disagrees. Compliance with constitutional and statutory requirements for the appointment of principal and inferior officers is neither absurd nor unwarranted.  It is the law.  The President did not nominate a principal officer during the period of Berryhill's service as acting commissioner of the SSA, nor did he designate Berryhill as the acting commissioner pursuant to Section 902(b)(4).  Kijakazi's arguments as to relevance of the "rule of necessity" are unavailing.

Kijakazi next argues that, despite the statutory ineffectiveness of the ALJ appointments that Berryhill ratified in July 2018, the "de facto officer doctrine" confers validity on the ALJ's actions.  "The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995).  The de facto officer doctrine responds

to the "fear of the chaos that would result from multiple and repetitive suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." *Id.* (internal quotation marks omitted). Kijakazi has not addressed the burden that purportedly would result from the Court finding the ALJ's appointment statutorily ineffective. Moreover, the only individuals who might benefit from this decision are SSA claimants who "have received an adverse ALJ decision, timely appealed to the SSA Appeals Council, had their review denied, then timely filed a claim in federal court, did not obtain a remand on the merits, and raised a timely challenge to Berryhill's ratification." *Brian T.D.*, 2022 WL 179540, at *16 (concluding that the purported scope of the burden on the SSA "is exaggerated by Defendant" and estimating that the decision might impact, at most, 9,799 cases nationwide). As the magistrate judge correctly observed, without an estimation of the burden on the SSA that would result from finding Berryhill's July 2018 ratification of ALJs statutorily ineffective, the Court cannot evaluate whether the de facto officer doctrine should apply in this case. The Court, therefore, rejects Kijakazi's reliance on the de facto officer doctrine.

Because the ALJ did not have the authority to hear and decide Stephanie G.'s case, the ALJ's decision must be vacated. *See Carr*, 141 S. Ct. at 1357; *Lucia*, 138 S. Ct. at 2055. Stephanie G.'s disability claim is remanded to the SSA for a new hearing before a properly appointed ALJ other than the ALJ who presided over the first hearing. *See Lucia*, 138 S. Ct. at 2055. The Court overrules Kijakazi's objections, adopts the June 21, 2022 R&R,

grants in part Stephanie G.'s motion for summary judgment, and denies as moot Kijakazi's motion for summary judgment.

### ORDER

Based on the R&R, the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Defendant Kilo Kijakazi's objections to the R&R, (Dkt. 43), are **OVERRULED**.

2.      The June 21, 2022 R&R, (Dkt. 41), is **ADOPTED**.

3.      Plaintiff Stephanie G.'s motion for summary judgment, (Dkt. 18), is **GRANTED IN PART** as to Stephanie G.'s request that the ALJ decision be vacated and that the case be remanded to the SSA for a new hearing before a properly appointed ALJ who is not the same ALJ that presided over Plaintiff Stephanie G.'s first hearing.

4.      Defendant Kilo Kijakazi's motion for summary judgment, (Dkt. 20), is **DENIED AS MOOT**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  August 19, 2022                          s/Wilhelmina M. Wright
                                                 Wilhelmina M. Wright
                                                 United States District Judge